IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
MARK A. JONES,                      )
                                    )
        Plaintiff,,                  )
                                    )
        v.                           )    NO. 3:07-0645
                                    )
NISSAN NORTH AMERICA, INC.,          )    Judge Echols/Bryant
                                    )    Jury Demand
        Defendant.                   )
```

## MEMORANDUM AND ORDER

Pending are defendant Nissan North America, Inc.'s motion to compel (Docket Entry No. 18), to which plaintiff has responded in opposition (Docket Entry No. 32), and plaintiff's motion to compel (Docket Entry No. 19), to which defendant has responded in opposition (Docket Entry No. 33). Plaintiff also has filed his motion requesting the undersigned Magistrate Judge to order defendant to submit certain documents sought by plaintiff's motion to compel for in camera review by the court. (Docket Entry No. 34). Defendant has filed a response stating no objection to this proposed in camera review, but urging the court to review two documents listed on plaintiff's privilege log as well. (Docket Entry No. 41).

For the reasons stated below, defendant's motion to compel is **DENIED**, plaintiff's motion to compel is **GRANTED** in part and **DENIED** in part, and plaintiff's motion for in camera review is **DENIED** as moot.

## Defendant's Motion To Compel

Plaintiff has filed his claim under the Americans with Disabilities Act and the Tennessee Handicap Discrimination Act, alleging liability discrimination and failure to make reasonable accommodations. Defendant has denied liability and argues that it merely imposed physical restrictions and limitations on plaintiff consistent with those found by the state court chancellor in a 2006 worker's compensation action filed by plaintiff against defendant. Defendant states that plaintiff's physical limitations and restrictions, as determined by the state court in plaintiff's worker's compensation action, precluded plaintiff from performing any "full job rotation in the Plaintiff's home department and shift."

Defendant in its motion to compel seeks responses to one request for production of documents (No. 19) and two interrogatories (Nos. 8 and 9) to which plaintiff has lodged objections.

**Defendant's Request for Production No. 19**. Request No. 19 reads as follows:

> "Each and every communication between Plaintiff and the attorneys representing him in his worker's compensation action against Nissan, Case No. 05269."

Plaintiff objected to this request on the ground that it seeks information protected by the attorney-client privilege.

2

Defendant acknowledges the existence of a privilege for communications between an attorney and his client, but defendant argues that plaintiff has waived the privilege in this case. See Cooper v. United States, 5 F.2d 824 (6th Cir. 1925). Specifically, defendant argues that plaintiff waived his attorney-client privilege by the following testimony in the plaintiff's discovery deposition:

> Q. So that's what you feel was wrong, was that they didn't send you back to see if the doctor agreed with what the Judge said in making his award to you?
>
> A. Yes, sir. And I think it was unclear as well. I don't think that's exactly what the Judge meant by that neither.
>
> Q. But again your lawyer didn't ask for any clarification.
>
> A. Yes, sir.
>
> Q. You didn't ask for any clarification?
>
> A. Well, I asked to go back before him, but we never did do that.
>
> Q. Who did you ask that?
>
> A. Bill Easterly.
>
> Q. When did you ask that?
>
> A. Shortly after trial, once I figured out what I was — what they were saying.
>
> \* \* \*
>
> Q. So is it your view that the Judge in the Workers' Compensation trial overstated the extent of your injury?
>
> A. Yes, sir.

3

> Q. Did you ever make any effort to get the amount of the award reduced to more accurately reflect the extent of your injury?
>
> A. No, sir.

Contrary to defendant's argument, the undersigned Magistrate Judge finds that the foregoing deposition testimony is insufficient to constitute a waiver of plaintiff's attorney-client privilege, and that defendant's motion to compel production of documents sought by Request No. 19 should be **DENIED**.

**<u>Defendant's Interrogatories Nos. 8 and 9</u>**. Defendant's interrogatories Nos. 8 and 9, and plaintiff's responses, read as follows:

> **Interrogatory No. 8**: Describe in detail every effort or contact made by plaintiff to secure employment (including self-employment or work as an independent contractor) or income from any source from August 2, 2006 to the present. Such description should include the potential or actual employer's name and address, the nature of the business, the date or dates on which the effort or contact was made, who initiated the effort or contact, the manner in which plaintiff applied or made contact, whether the employer interviewed plaintiff, the substance of any correspondence or communication, the type of position or business opportunity, the dates and the substance of all meetings or communications, the terms and conditions of any offer of employment or business proposal, and whether plaintiff accepted or declined any offers of employment or business opportunity and, if so, why.
>
> **ANSWER**: Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Without waiving his objections Plaintiff refers Defendant to his deposition testimony and to the records that Defendant obtained from employers to whom Plaintiff made application or inquired about employment. Plaintiff applied at Southwest Airlines on-line but did not receive

4

an interview. Plaintiff applied for a TSA security officer position at the Nashville Airport on-line but did not receive an interview. Plaintiff applied with the Gideons International and received an interview but not a job. Plaintiff applied for a police officer position with the Metro Nashville Police Department and was invited to take the civil service exam, but declined as he had already accepted his current job with ARS. Plaintiff inquired about and applied for various other positions through the unemployment resources office in Lebanon, Tennessee. Plaintiff contacted Defendant several times after August 2, 2006, to inquire about being placed back in his job or another job with Defendant and left voice messages but Defendant never called him back about any job.

**Interrogatory No. 9:** Describe any employment or self-employment (including services for any family business) that plaintiff has had from August 2, 2006 to and including the present, providing complete information for each employer or business for whom he has worked in any capacity, including but not limited to the employer's or business entity's name and address, the nature of its business, the date plaintiff was hired or began work, the date of and reason(s) for termination, the nature and title of the position held by and duties performed by plaintiff, the rate of pay, plaintiff's total income, his direct supervisors and, in the case of self-employment, a description of the dates, nature of the work, and the total amount and source of all income.

**ANSWER:** American Residential Services ("ARS"), 4071 Powell Avenue, Nashville, TN 37204, HVAC and Plumbing Fleet Manager. See Plaintiff's deposition for description of duties and documents Defendant obtained from ARS for other information . Hired October 14, 2007. $13 per hour.

Interrogatories Nos. 8 and 9 seek information about places where plaintiff has sought employment, and has been employed, respectively, since August 2, 2006. Plaintiff has responded to both of these interrogatories, but defendant argues that plaintiff's responses failed to answer fully each inquiry in

5

these interrogatories and moves for an order compelling supplemental responses. In view of defendant's opportunity to interrogate plaintiff at deposition on these matters, the court's prior ruling allowing defendant to obtain documentation by subpoena directly from plaintiff's current employer and employers where he sought work (Docket Entry No. 49), and plaintiff's responses to these interrogatories, the undersigned Magistrate Judge finds that defendant's motion to compel seeking supplemental responses should be **DENIED**.

### Plaintiff's Motion To Compel

Plaintiff in his motion to compel seeks an order compelling defendant to serve supplemental responses to Requests for Production Nos. 2, 3, 8, 9, 14 and 22 of Plaintiff's First Set of Requests for Production, and to compel responses to certain questions at defendant's Rule 30(b)(6) deposition, which questions the witness was instructed by counsel not to answer.

**Plaintiff's Requests for Production Nos. 2 and 3**. Plaintiff's Requests Nos. 2 and 3, and defendant's responses, read as follows:

**Request No. 2**: All documents that relate to, deal with, summarize, or contain a description of every job or work assignment performed by plaintiff in the years 2004, 2005 and 2006, including but not limited to, a description of the duties, responsibilities, requirements, and the essential and non-essential functions of each such job or work assignment.

6

**Defendant's Response**: Nissan objects to Document Request No. 2 as being overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks all documents relating to every job that Plaintiff performed over a three-year period. The request is not limited to documents referring to the Plaintiff and, as worded, would encompass thousands of documents not remotely relevant to any of the issues in this case. Without waiving said objection, Nissan states that it has produced documents relating to Plaintiff's job duties and responsibilities. See Document Nos. 105-136, previously provided to Plaintiff in his state court action against Nissan.

**Request No. 3**: The job description of the position plaintiff was assigned to in job fits in the trim area referred to in Paragraph 11 of your Answer, including documents defining the essential and non-essential functions of such position.

**Defendant's Response**: There is no written job description for the position.

These two requests seek "all documents that relate to, deal with, summarize, or contain a description of" every job performed by plaintiff during the years 2004-06. Defendant has objected to Request No. 2 as unduly broad and burdensome, and states that it has already produced documents related to plaintiff's job duties and responsibilities in plaintiff's parallel state-court action against Nissan.

7

The undersigned Magistrate Judge sustains Nissan's objection in part, but orders it to produce any written job description for plaintiff's assigned jobs not already produced, as well as the Standard Operating Sheets ("SOS") for plaintiff's assigned jobs, as described in the deposition testimony of witness Rodney Dean Shaw (Docket Entry No. 19-4, p. 2).

**Plaintiff's Requests for Production Nos. 8 and 9**. Plaintiff's Requests Nos. 8 and 9, and defendant's responses, read as follows:

**Request No. 8**: All documents, communications, e-mails, messages, notes, exchanges of information, comments, or other documents related to defendant's determination(s) concerning plaintiff's employment, job status, or fitness for duty following the oral ruling by Chancellor C. K. Smith in plaintiff's worker's compensation lawsuit.

**Defendant's Response**: See Document Nos. 58, 416-18, 569, previously provided to Plaintiff in his state court action against Nissan.

**Request No. 9**: All documents, communications, e-mails, messages, notes, exchanges of information, comments, or other documents related to, commenting on, evaluating, or otherwise dealing with the oral ruling of Chancellor C. K. Smith in plaintiff's worker's compensation lawsuit, including Chancellor Smith's statements concerning plaintiff's restrictions.

8

**Defendant's Response**: Nissan objects to Document Request No. 9 as being overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Further, the request is vague in terms of requesting the production of documents "dealing with" the ruling of Judge Smith. Nissan also objects to the request on the basis of the attorney-client and work product privileges since, on its face, the request seeks the production of non-publicly filed documents prepared by or sent to its attorneys in Plaintiff's workers' compensation proceeding and in this legal proceeding. Without waiving said objection, see Document Nos. 416-18, 569 and 772-783 previously provided to Plaintiff in his state court action against Nissan.

Plaintiff in these two requests seeks all documents related to Nissan's determinations of plaintiff's employment or fitness for duty following the ruling by Chancellor C. K. Smith in plaintiff's workers compensation trial.

Defendant, in response, states that it has already produced responsive documents in plaintiff's parallel state-court action against Nissan. In addition, Nissan objects to Request No. 9 as being overbroad, vague and as seeking privileged, nonpublic documents consisting of communications to and from Nissan's attorneys in the workers compensation case and in this action.

From the record before the court, it is difficult to determine precisely what documents already have been produced by

9

defendant Nissan in this action and in the parallel state court action. Nevertheless, the undersigned Magistrate Judge orders Nissan to produce the following documents if they have not already been produced:

(a) the e-mail documenting "the decision made at the second meeting," as described on page 25, lines 6-7, of the deposition of Raymond Coss, and the e-mail to Dr. Anne Kubina, believed to be from Niles Tate, informing Dr. Kubina of medical restrictions that she was requested to document in plaintiff's medical record, as described in pages 43 and 45 of Dr. Kubina's deposition;

(b) the "Leave of Absence/Return to Work" report listed as item 12 on defendant's privilege log; and

(c) any other documents not listed in defendant's privilege log related to Nissan's decision to impose work restrictions on plaintiff or place him on a medical leave of absence.

**Plaintiff's Requests for Production Nos. 14 and 22**. Plaintiff's Requests Nos. 14 and 22, and defendant's responses, read as follows:

**Request No. 14**: All documents identified in your response to Interrogatory 18 of plaintiff's First Interrogatories. Interrogatory No. 18 reads: Please explain why on or about July 18, 2006, Anne Kubina reviewed Chancellor Smith's order from

10

plaintiff's worker's compensation case, and identify all documents related to her review of the order, including all transmittal messages or documents to or from Anne Kubina, all instructions, comments, and explanations related to such review, and all documents related to her opinions and actions taken or decisions made as a result of or based on her opinions.

**Defendant's Response**: Defendant previously produced Doc. Nos. 58, 416-18, 569, 772-783 in Plaintiff's state court action against Nissan.

**Request No. 22**: All documents related to or evidencing communications, e-mails, messages, notes, or the providing of or exchange of information between you and CHS related to plaintiff in 2006, including but not limited to, medical updates from CHS.

**Defendant's Response**: See Plaintiff's medical file previously provided to Plaintiff in his state court action against Nissan Doc. Nos. 143-566 and, specifically, Doc. Nos. 416-429. See also Doc. No. 58.

Dr. Anne Kubina has testified in deposition that she received an e-mail from Miles Tate, she believes, of ESIS, stating the findings of Chancellor Smith "as to what Mr. Jones could and couldn't do." (Kubina depo., p. 43). She further testified that "someone in legal" asked her to document the restrictions that Chancellor Smith had stated into Mr. Jones's medical record (Id., pp. 46-47).

11

It appears from the record that Nissan has already produced responsive documents in plaintiff's parallel state-court action against Nissan, but specifically what has been produced is unclear, at least to the undersigned Magistrate Judge.

The Magistrate Judge orders that, to the extent that it has not already done so, Nissan shall produce the following documents:

(a) the e-mail sent to Dr. Kubina by Miles Tate, or by any other person, describing or relating to work restrictions applicable to Mr. Jones;

(b) items 14 and 15 in Nissan's privilege log, for which no objection is listed; and

(c) any other documents provided to Dr. Kubina relating to Mr. Jones' workers compensation claim, work restrictions imposed on Mr. Jones, the effect of work restrictions on his employability at Nissan, and the decision to place Mr. Jones on medical leave.

**Plaintiff's Deposition Questions to Rule 30(b)(6) Witness Ray Coss**. On April 11, 2008, plaintiff's counsel deposed Ray Coss, who was designated to testify as a Rule 30(b)(6) designee for defendant Nissan. During that deposition, defendant's counsel objected and instructed Mr. Coss to answer certain questions on the grounds of attorney-client privilege and the attorney work produce doctrine. Plaintiff moves to compel Nissan to respond to those questions.

12

Specifically, plaintiff seeks an order compelling Mr. Coss to answer the following questions:

(a) what was "the substance of the discussions" at a meeting convened on or just before July 25, 2006, to decide whether "to enforce or impose the court-ordered restrictions" on Mr. Jones (Coss depo., pp. 44-45);

(b) whether Mr. Coss undertook any research on the effect of the Americans With Disability Act on questions to be decided at this meeting (Coss depo., pp. 50-52);

(c) what was the substance of discussions between Mr. Coss and Mike Berger before an earlier meeting to discuss the results of Mr. Jones' workers compensation trial (Coss depo., pp. 18-20);

(d) what conditions did Nissan consider as prerequisites for dropping its appeal of Mr. Jones' workers compensation case (Coss depo., pp. 59-60).

Plaintiff argues that the foregoing inquiries do not seek privileged information or, alternatively, that any applicable privilege for some of this information was waived by Nissan by the presence of Dr. Anne Kubina, an employee of Comprehensive Health Services who, by contract, served as medical director of Nissan's health care facility. (Kerry Dove depo., pp. 6-8).

Rule 501 of the Federal Rules of Evidence provides that unless provided by federal constitutional or statutory law, federal

13

common law governs evidentiary privileges except in civil cases "as to which State law supplies the rule of decision." Since this case is brought pursuant to the Americans With Disabilities Act, federal common law governs the applicability of the attorney-client privilege and the attorney work produce doctrine.

Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196 n.4 (D. Kan. 1993). The privilege also protects advice given by the lawyer in the course of representing the client. Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).

Although it is generally accepted that disclosure of otherwised privilege communication to a third party constitutes waiver of the attorney-client privilege, this case raises the question whether disclosure to Dr. Kubina, the medical director of Nissan's medical department, albeit employed by Comprehensive Health Services, constitutes a waiver of the privilege. Neither party has offered Sixth Circuit authority on this question, and the undersigned has found such authority to be scanty. Nevertheless,

14

the District Court for the Western District of Tennessee, construing Tennessee privilege law, has held that the attorney-client privilege is not waived by disclosure to a third-party whose involvement in the matter at issue is so integral as to be considered an "insider" with respect to communications with the client. Royal Surplus Lines Ins. co. v. Sofamor Danek Group, Inc., 150 F.R.D. 463, 471-72 (W.D. Tenn. 1999). In Royal Surplus Lines, the Western District cited with approval In re Bieter Co., 16 F.3d 929 (8th Cir. 1994). In Bieter, the court held that an independent contractor, not an agent or employee of the client, was so intimately involved with real estate development project that disclosure to him of otherwise privileged documents in the course of confidential communications with counsel did not destroy the privilege. 16 F.3d at 939-40.

Though the nature of the transaction here is markedly different, the undersigned Magistrate Judge finds that Dr. Kubina, as medical director of Nissan's medical clinic and custodian of records of medical restrictions applicable to Nissan employees, had a "significant relationship to the [client] and the [client's] involvement in the transaction that is the subject of the legal services." 16 F.3d at 938. Here, the inquiry consisted of the legal implications of medical restrictions mentioned by Chancellor Smith in Mr. Jones's workers compensation case, and their effect, if any, on Mr. Jones' continued employment at Nissan. Dr. Kubina,

15

as medical director, was the custodian of employees' medical records and the repository of information on medical restrictions applicable to Nissan employees. The undersigned Magistrate Judge finds that, under these circumstances, Dr. Kubina's presence during discussions by and among Mr. Coss and Mr. Berger, both in-house counsel to Nissan, and Kitty Boyte, Nissan's trial counsel in the workers compensation case, did not constitute a waiver of the attorney-client privilege.[1]

Finally, counsel for Nissan objected based upon the attorney work product doctrine when plaintiff's counsel asked Mr. Coss whether he had performed any research regarding the effect of the Americans With Disabilities Act. (Coss. depo., pp. 50-51). The attorney work product doctrine protects documents, not information. Royal Surplus Lines, 190 F.R.D. at 474. Therefore, the specific objection raised did not apply. Nevertheless, asking an in-house lawyer whether he performed specific legal research in preparation for a meeting to discuss legal implications of a court's ruling impermissibly seeks disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney.

---

[1] Plaintiff relies upon Marten v. Yellow Freight System, Inc., 1998 WL 13244 (D. Kan. Jan. 6, 1998), in which the magistrate judge denied attorney-client privilege based upon a finding that in-house counsel in that case served in a primarily business, as contrasted to legal, role. The undersigned Magistrate Judge finds that the Marten case is distinguishable on its facts, and that the role of Mr. Coss in the subject meetings was primarily that of a legal advisor to Nissan.

16

For the reasons stated above, the undersigned Magistrate Judge **DENIES** plaintiff's motion to compel to the extent that it seeks an order requiring further responses from defendant's Rule 30(b)(6) deposition witness.

To the extent that this order requires Nissan to produce additional documents, those documents shall be delivered to the office of plaintiff's counsel by the close of business on **Friday, September 19, 2008.**

Except as stated above, defendant's motion to compel (Docket Entry No. 18) and plaintiff's motion to compel (Docket Entry No. 19) are **DENIED**.

Plaintiff's motion for <u>in camera</u> review (Docket Entry No. 34) is **DENIED** as moot.

There being no further matters pending before the undersigned Magistrate Judge, the case is certified ready for trial.

It is so **ORDERED**.

s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge